May I please encourage Dave Gauntlett representing Big 5. I'd like to reserve three minutes for rebuttal. This case may be resolved in Big 5's favor based on the analysis of five California Supreme Court opinions which the appellee insurers studiously avoid when their analysis is applied to the actual allegations of the coordinated amended complaint, which I'll refer to as a CAC, which is the operative pleading and the underlying action. The first key case is Horace Mann v. Barbara Bee, cited four times in our opening brief, one in our reply, and only addressed by Zurich, given short-tripped treatment and not discussed by Hartford at all. The second is McKinnon v. Truck Insurance Exchange, addressed both in our opening brief one time and in our reply twice, which is not discussed by either of the two insurers. The third is Waller v. Truck Insurance Exchange, which we referenced two times in the opening brief, one time in the reply, not discussed by Zurich and given short-tripped by Hartford. The two other cases are Pioneer Electronics v. Superior Court and Hill v. National Collegian Association. And what's the proposition of law that you distill from these five cases that wins for you? Frivolous, false, fraudulent lawsuits require a defense. So the question is if the allegations are viewed by the district court as not passing muster because there's not enough specificity to fall beyond the statutory exclusions, nonetheless the job of the insurers is to show up and defend to establish why there is no possible liability. And that's something that they initially did, agreed to defend under reservation and then they got a get-out-of-jail-free card when the district court agreed that maybe there was no defense, even after initially concluding that there was potential coverage. And if you look at the operative facts that are the true facts of the CAC, it has four elements. One... Is this a mixed action? Are there some claims within or arguably within or even if false or fraudulent or unfounded within the coverage and some that are clearly without? Well, the point of Pioneer Electronics is that this is the kind of claim which necessarily includes mixed actions of fact and law, which is inappropriate to have adjudicated as a matter of law against the insured. In effect what the court did... the insurance company does not have the right or duty to defend, just the duty to indemnify the policyholder for its expense costs. Expensive defending, is that correct? Well, the SIR issue has been judged in our favor by the court and shouldn't be revisited. There's still a potentiality standard under an indemnification reimbursement obligation. When you talk potentiality standard, you're talking about the duty to defend... Well, even if you have a potentiality standard, that can apply in a reimbursement setting and it walks and talks like the duck call duty to defend in that context because there's been no adjudication of liability. And so the four elements are we use customer zip codes and other personal information for marketing purposes, allegedly. We disseminated the information to third parties for profits. We alleged conduct exposing customers to harassment, fraud, and identity theft. And we engaged in a serious invasion of privacy, highly offensive to a reasonable person. These are all alleged, unlike the Microtech case from your Honor, Justice Kleinfeld, where they didn't have the fact allegations to allege disparagement that were in the complaint and that was a problem. Here we have them. So would you concede if all they did was take the zip and didn't do anything with it, it would all be sung Beverly? Yeah, that's right. And then they wouldn't have a duty to defend? Correct. That's not an issue. So if you look at Urban Outdoors, which we didn't have a chance to address. And all of these cases settled, right? So we don't really know. If we'd had a jury verdict and maybe some of them were some, it turned out that Big Five was, I don't know, mailing things out and doing all of these sort of things that there might be something to it, but we don't know right now. And I think there's a, but then there's a Third Circuit case, albeit not controlling, but in one of the millions of 28J letters that you all filed. Could have been a little less there. The One Beacon, I guess, is the case. Yeah, I'll discuss that. You probably should distinguish that because I think that speaks against your proposition. Well, not really. If you look at it.  I am talking about Urban. Judge Chirica's decision in the Third Circuit. The Third Circuit case, which we hadn't had a chance to actually address. Two things, three things to know about it. One, they got rid of all the non-SBA claims. All the common law claims were not part of what went to the court for its analysis of coverage. The case is factually distinguishable in a big way. Two, their exclusion is different. It had additional limiting language we don't have. It had the precatory words printing, disseminating, disposal, collecting, and recording before the words we have, which reads clearly on the SBA. So that case can be addressed by the mere fact that the BAD Act is recording and publication. Those are the items at issue in an SBA claim. That's all that was alleged. There were only SBA claims pending. Ergo, no defense due. That's a very small part of the suit against us, and it forgets the other allegations. There's a case that's directly on point that explains why statutory claims, where they don't eat up all possible liability, can create, nonetheless, potential coverage in dealing with defamation claims, not invasion of privacy claims. And it's Axiom Insurance Managers, LLC, the capital specialty, H-76, F-sub-second, 1005, 1015 from the Northern District of Illinois in 2012. We also cited a 2015 case with much the same interpretive view of when a statutory provision does not eat up the universe where you have other common law claims called Big Bridge Holdings Inc. v. Twin City Fire, which cites in earlier Twin City cases Integra Telecom. Both talk about these claims beyond the scope of the exclusionary activities. The thing to recognize what the district court did, the district court took a year to get to the case because she read the Fogelstrom decision, which is an underlying case which applied a 12B6 plausibility standard inspired by Iqbal. What Iqbal said is the plausibility standard asked for more than a sheer possibility that a defendant has acted unlawfully. Well, guess what sheer possibility is? That's the duty to defend potentiality of these standards, so it's a different standard. Oh, and about urban outfitters, Pennsylvania law, you know what they do? Reasonable possibility, not any possibility. Montrose, 1993, Cal Supreme Court, court page 300 says, hey, reasonable possibility, that's what the insurers are arguing, we're not going to go there. Any possibility is our standard in California. So you have to look at these things, they're somewhat nuanced, but there are different standards. Here's the most important point, Waller. California has gone pretty far on that stuff, much further than most states, and I've always wondered what the current state is. Suppose the complaint is John Doe sues Richard Rowe on a theory of assault and battery because Richard Rowe punched John Doe in the nose. The insurance company for Richard Rowe refuses to defend him because it's an intentional act. John Doe says, no, no, no, or Richard Rowe says, no, no, no, John Doe may file an amended complaint saying that I negligently punched him in the nose. Under California, I know at least the way it used to be, there would be a duty to defend in that case because John Doe might indeed file such a complaint. Is that still the law in California? Well, you have to have some factual basis. There was a recent decision where Manny Real was reversed by this court where there was evidence that in the assault and battery context, and it's cited in our materials, what happened is that there was evidence that there was a possibility that there hadn't been an assault and battery and that evidence was a police report and the police report was referenced and the reference police report led the Ninth Circuit panel to decide, yeah, there may have been more going on here. So we don't have just a potential for amendment. We have an actual amendment and the amendment says all the things it needs to say and they're saying, let's not look at that. Let's avoid the man behind the green curtain. We don't want to see what's going on down there. I'm getting lost in all the metaphors and similes and analogies. Well, the four points that I raised, Your Honor, about what the facts are, those facts are enough. The complaint is Big Five Sporting Goods took down and used people's zip codes wrongfully under California law. More than that. And they disseminated information to third parties for profit and they allowed them then to then re-contact them with that information and it's alleged that this conduct was a serious invasion of privacy, highly offensive to a reasonable person, which is the buzzword for a California constitutional violation. And while it's true that making private facts public, the privacy prong is implicated and everybody agrees that's defensible. It seems like there's a whole lot of room for pleadings amendments here. There's a whole lot more room than in the assault and battery cases. Yes, and if you look at Scottsdale case. It's hard for me to understand why, as discovery went on and pleadings amendments went on, the insured here could not plead that Big Five meant to do the right thing. It accidentally did the wrong thing. It had a policy that was right, but some clerks didn't follow the policy, so things just got messed up on the zip codes and they got disseminated technically in violation of law. I think there'd be a duty to defend if they pleaded it that way, wouldn't there? That's what was planned. If you look at the actual CAC carefully, you'll find that it meets all the elements for making private facts public. Why do you have to look at it carefully? Because you have to look at not only the potential for coverage based on a potentiality standard, but you have to infer from the fact allegations per Scottsdale, the Cal Supreme Court case, what facts are implicit that are not made explicit, and also whether there's a potential for further amendment in light of the facts asserted. That could create a duty to defend. That's the law in California. It's a very broad standard regarding the duty to defend, and the court already found that we pled facts that were sufficient to meet the four elements of personal injury coverage. The problem is the exclusion, and the exclusion for the court was a problem because she assumed that one decision in Vogelstram, which had a plausibility standard analysis in a 12b6 setting, had found facts which were not as full and complete as ours were problematic. But that's not the standard. The standard is duty to defend. If you allow this case to be affirmed, you're going to have district judges running around looking at the merits, trying to figure out if the case is good enough to pass a 12b6 requirement. Well, so Vogelstram says it said that they did not constitute a serious invasion of privacy, and you're saying that what you've alleged could be a serious invasion. The words from the complaint are a serious invasion of privacy, highly offensive to reasonable purposes, and has been factually alleged. That is in the complaint, as is the additional conduct exposing customers to harassment, fraud, and dendritics to be sold allegedly. This private information, the third-party vendors, are then used to go back. Do you want to save your time for rebuttal? Yes, Your Honor. Do you want to save that? Thank you. Good morning. Are you sharing time? Yes, good morning, Your Honors. May it please the court, I am Jan Pocatero from Selman-Brightman for Appalachia-Zurich American Insurance Company. We are intending to share the 15 minutes. I would appreciate a warning about 7 1⁄2 minutes so I don't intrude into— Okay, I'll stop you. Thank you very much. Okay. Unless the court has questions, and if we continue to have questions, we'll still give you your 7 1⁄2, okay? Is Zurich the one that has to pay the policyholders' defense expenses, or is Zurich the one that has to defend? Zurich has a regular defense duty after the SIR. However, as Mr. Gauntlet said, the SIR issue is no longer in play. It's SIR, self-insured retention? Self-insured retentions are not in play. We do reserve our rights, should it be remanded to. When I used to be in this business, if there was like a half-million-dollar self-insured retention, it would mean the insurance company ordinarily doesn't defend. It just reimburses the expense of defense. But if there was not, then the duty to defend and the power to control the defense would start right from the get-go. And that's what I'm trying to figure out. This is still a regular duty-to-defend policy, Your Honor. There are SIRs, and again, we're not really discussing those today. But Zurich did indeed defend both the first and second, the Zimmerman and Gonzalez case, and settled the Gonzalez case. Zurich also defended the Mata and the Nelson case because it had allegations of privacy invasion, which we will discuss actually couldn't really be... So you defended several of the cases that are within the class action. Yes, and the coordinated case. We defended all of those. And as the court, we are seeking reimbursement for those defense costs because it is our, Zurich's feeling, as the judge ruled below, that indeed there really was no defense duty. Part of the reason there was no defense duty is because of the fact that we have an extremely broad exclusion. It isn't exactly the one that was stated by Mr. Gauntlet. Both of Zurich's exclusions exclude distribution of material in violation of statutes. That excludes personal and advertising injury arising directly or indirectly out of any action... But I think Vogelstrom says, no, they weren't, doesn't it? Vogelstrom actually says you cannot have a privacy invasion or an intrusion of privacy, be it constitutional or tortious, based on the facts of a Song-Beverly violation. You just can't have it. As a matter of law, it cannot be a substantial intrusion. It cannot be an objectionable... That would seem to me that they're not out of the coverage because it's not a violation of the Song-Beverly Act. No, in other words, all of it, everything in the complaints was a violation of the Song-Beverly Act and only that because anything arising directly or indirectly out of... Wait, I thought Vogelstrom said the stuff in the complaint is not a violation of the Song-Beverly Act. It's hard to keep track. I may be mistaken. Let me try to clarify, Your Honor. What was not a violation of the Song-Beverly Act were the privacy invasion and other tort claims, which really couldn't be stated on the facts of the Song-Beverly. What Vogelstrom was stating was not that the communication, the dissemination of zip codes, that is a violation of the Song-Beverly Act. Indeed, that's what all of the complaints against Big Five stated. But they alleged more. Zurich's 2007 and 2008 statutory exclusions apply to statutes that prohibit or limit the sending, transmitting, communicating, or distribution of material or information. How can these exclusions apply to the Song-Beverly Act, which only prohibits the request or recording of personal identification information? Actually, Your Honor, in actuality, that is a communication. It prohibits communication. When a sales clerk stands there in front of a payee, paying by a credit card, and says, We need your zip code. Communication, according to Webster, is conveying information from one person to another. That's exactly what was happening. I thought the Song-Beverly Act was different. I thought it meant if Big Five sells the names of people who come from rich neighborhoods based on the zip code, that's the violation. No, actually, the Act only bars or prohibits... There are two reasons to get the zip codes that I can think of. One is to verify that it's not a fraudulent use of a stolen credit card. What's your zip code, sir? 99739. And then when the clerk punches in the number of the card, Visa says the zip code of this person is not 99739. It's 99379. That request for the zip code information was to prevent the fraudulent use of a stolen credit card. The other use of the zip code is Big Five sells to Whole Foods groceries. Here are rich customers based on the zip codes where they live. And Whole Foods is very happy to have those consent flyers to the rich people. And I thought Song-Beverly Act was designed to address the latter but not the former. No, Song-Beverly Act only addresses the request and the recording. It doesn't go any farther than that. And because it doesn't go... And so it's a violation right there. But here the allegation is there's more than that happening. Exactly. And because that's a communication... So it criminalizes or makes... Penalizes. Penalizes. The clerk asking the customer, What's your zip code, sir? So that she can see if it's a fraudulent use of a credit card. Absolutely. That is exactly what the Song-Beverly Act does. And in doing that, in communicating that, Big Five was violating the Song-Beverly Act. Big Five claims that it... I wouldn't have imagined that. That's definitely a violation even after Fogel? Well, in fact, the Pineda-Williams decision decided that the zip code was actually part of the address and therefore had to be included under the Song-Beverly genre of violation. Our actual exclusions basically preclude any... Well, okay. But here's where I have problems with your exclusions. I think arguably they could be ambiguous. And then if they're ambiguous, we have to construe them narrowly against the insurer. And it appears in 2009 that you amended your statutory exclusions to include more statutes, including those that relate to prohibit or limit the accessing, collection, or recording of information. Doesn't this amended language strongly suggest that the earlier Zurich statutory inclusions did not encompass the Song-Beverly Act but that the amended 2009 statutory exclusion does? I would answer that with a no, Your Honor, and I can read it. But I kind of have put my finger on something that's a little pressure point for you. Pressure point, yes. But when you look at the language, it bars personal and advertising injury arising directly or indirectly out of any action or omission that violates or is alleged to violate any statute, ordinance, or regulation that prohibits or limits the sending, transmitting, communicating, or distribution of information. And this is our first statutory violation. The second one contains a little more, but it absolutely contains the same thing as... Okay, but would you concede that your argument would be better if you were arguing the 2009 language than the 2007 and 2008 language? My argument would actually be the same because I believe... Well, I'm not saying your argument would be... You would make the same argument, but you have a better argument under 2009, a more clear argument. It would be enhanced, not more clear. I believe that what we're saying is by the very act of requesting and recording, Big Five has violated the Song-Beverly Act by communication. Communication of information. They did it again and again and again. They actually admitted to having an information capture policy. Okay, I think I understand your argument. I've taken you a minute over, so I'm going to put your colleague back to seven and a half. Thank you. So can we put this one back at seven and... Well, yeah, thank you. Thank you, Your Honor. Mitch Tilner for... at Billy Hartford Fire Insurance Company. Seven and a half. It's okay, I'll give you 30 seconds over. Thank you. Thank you, Your Honor. I would like to devote my remarks to an exclusion unique to Hartford's policy. It's the exclusion on which Hartford prevailed in the lower court, and it's an exclusion that Mr. Gauntlet did not mention in his opening remarks. That's Hartford's exclusion titled Right of Privacy Created by Statute. That exclusion bars coverage for personal injury arising out of the violation of a person's right of privacy created by any state or federal act. Now, this court's opinion in Continental Casualty v. Richmond explained what arising out of means when it's used in a policy exclusion. The court said it means incidental to, related to, flowing from, originating from. So applying that teaching to Hartford's exclusion, the exclusion bars coverage for any claim that originates from, flows from, or is incidental to a Song-Beverly violation. Couldn't the underlying negligence and privacy claims fall within Hartford's exception to the statutory exclusion? Why isn't that the case here? No, they do not fall within the exception, Your Honor, because the exception means any right of privacy that would exist without the statute, that still stands and will cover invasions of those rights of privacy. However, there is no common law right of privacy existing in California for requesting a zip code. That is not a common law offense in California. That's an offense only because the Song-Beverly Act was enacted into law. That's why the act was enacted. Because there was none. Because there was no tort for asking, requesting a zip code.  There's no constitutional right of privacy for asking the customer where he lives? That's correct. That is not a common law tort. Now, it's a tort under the Song-Beverly Act. It's an offense. Is it a constitutional tort under the California Constitution? No, it's not, Your Honor. It's not. Because there's no recognized right of privacy in a zip code. Well, it's where you live. Well, in this case we're talking about zip codes, but where you live. But there is no common law... The zip code is where you live. Yes, Your Honor. They have maps, and it shows if you live in this neighborhood, you're this zip code, that one, that. Exactly. The California common law does not recognize a right to keep your zip code private. That's why the legislature passed the Song-Beverly Act to stop retailers from requesting zip codes. Otherwise, they were free to do it. Is Hartford's policy different from Durex's policy in this respect? Yes. Yes. This exclusion is unique to Hartford's policy, Your Honor. And indeed, the Song-Beverly Act itself does not treat zip codes as private or confidential. For example, under the Song-Beverly Act, the retailer may request the zip code of a customer who pays with cash. Song-Beverly only applies to credit card transactions. So this exclusion is the key to... Well, does the Song-Beverly Act, for it to be complete, it doesn't have to necessarily involve publication, though, correct? Song-Beverly prohibits... We were talking... I mean, it could be done at the cash register. Well, that's... Song-Beverly is addressed to the cash register transaction. That's correct. And so then, if after that's over, then there's a further... Something else is done with that information. There's publication of it. Isn't that beyond... I mean, the Song-Beverly, it's already completed, and that's what they're being fined for, right? And if something more happens, what do you call that? Your Honor, if the something more happens, it's still excluded under the Hartford exclusion, which says it excludes liability for personal injury arising out of a Song-Beverly violation, meaning anything that flows from... Not just for a Song-Beverly, but arising out of. Arising out of the Song-Beverly violation. Now, Mr. Gauntlet argues these underlying complaints, they alleged common law invasion of privacy, they alleged constitutional violations, they alleged all kinds of things. So do you have a better argument than Zurich on this? Well, this exclusion is unique to Hartford's policy, so Zurich does not have this. You don't want to throw Zurich under the bus here, but you have this and they don't, right? Well, that's the fact, Your Honor. It's in our policy. You're basically saying even if Zurich loses, Hartford's entitled to win because of this exclusion. That is correct, Your Honor. That is correct. But I do want to emphasize that Mr. Gauntlet's reliance on the common law allegations, the invasion of privacy cause of action, we disregard labels in California. We don't look at the label on the cause of action. We look at the facts alleged. And in every cause of action, in every underlying complaint, the pleader incorporated by reference the Song-Beverly violation, the requesting of zip codes. That's the fact that underlies every claim. So what you're saying is there is no common law claim for asking for a zip code, so no matter how liberal California law is on the duty to defend and the possibility of the case being repleted in some way that fit within the coverage, there's no way you could replete asking customers for their zip codes in a way that would fall within either policy. Have I got that? Yes, Your Honor. There's no way they could amend... The legislative history of the Song-Beverly Act makes that clear, doesn't it? The legislative history makes it clear. Cases make it clear. There's no way you can plead a tort based on requesting a zip code in California. That's the critical fact underlying every claim. No way you can plead a tort for requesting a zip code unless you plead it under the Song-Beverly Act. That's exactly right. The only reason it's actionable is because of the Song-Beverly Act. Without that act, there'd be no action against it. That's the very reason for the existence of the act. Exactly, Your Honor. Without that act, there would be no underlying actions against Big Five. And you can call it negligence or anything else. It doesn't work. It doesn't work. It falls within the Hartford exclusion. That's correct. And under that approach to the case, Zurich and Hartford both win. Is that correct? Well, Zurich and Hartford do share the other exclusion, which is the distribution of material in violation of a statute exclusion. So if the court rules in Zurich's favor on that exclusion, it can also rule in Hartford's favor because we have the identical exclusion. But what I'm addressing here is another exclusion unique to Hartford's policy, which makes it very clear that no matter how you label your cause of action, if you're alleging zip codes... You're saying even if it's only under the sharing exclusion, which is the only one that Zurich has, Hartford still wins under the... The right of privacy created by statute. The violation of statute exclusion. Yes, Your Honor. That's correct. Did you file any 28-J letters in this case? We filed a letter on the One Beacon case, the Third Circuit case, yes. I've been on the bench since 1988, and I've never seen a more egregious misuse of 28-J in my time on the bench. We were bombarded with 28-J letters that had really nothing to do with the resolution of the case. I've never ever seen a panel issue an order before saying no more 28-J letters. I hope somebody learns a lesson from this. They weren't 28-J letters. They were supplemental briefs. Absolutely. And, you know, what's the purpose of that? To charge the client money? I mean, those were completely unnecessary, useless, a waste of time, and got in our way. Most of them said the Selman thing. I hope you recognize that. Somebody should read 28-J letters and figure out exactly what they're for. Urban Outfitters might have been useful. But the rest of them were not. Also, just a point of practice, never refer to Judge Real as Real, and don't call him Manny. He will take your head off. He is not Real. He is real. And he gets furious at that. And a furious Judge Real is a real problem. All right. That being said, your time has expired. Thank you, Your Honor. Your Honor, I think the most important thing to look at is Waller. Waller says quite clearly in his Cal Supreme Court case that you first look, before even considering exclusions, the court must examine the coverage provisions to determine whether a claim falls within the policy terms. Here, if you look at each of the exclusions, they're predicated by the words personal and advertising injury in quotes. So before you decide what the exclusion applies, you have to figure out what's covered. Well, what we're saying is covered is not the Song-Beverly Act publication or the recording aspect. We're looking at the distribution activity thereafter, the use of the codes, the dissemination, the exposure, which falls within the exception to the Hartford exclusion and is not reached by the other statute. And you're calling that an invasion of the right of privacy. Correct, because... And the Song-Beverly Act, as far as I can tell, exists because there is no invasion of privacy for something like that. It's too cute by a half. You're trying to get around something that's a complete roadblock, aren't you? There's a distinct cause of action for common law privacy for that aspect of our conduct. It is not... We're not being sued under the Song-Beverly Act for what I just mentioned. We're sued on a separate, distinct common law privacy tort. And so... What's the tort? What's the tort? The tort is making private facts public in such a way... What's the private fact? And what was the making it public? The personal addresses as achieved through the zip codes, which information is then disseminated and sold to vendors who then contact people improperly. So what you're saying is... You're saying it's against common law. And California constitutional privacy. Could... Let me make sure I've got this right. It'll help if I can ask the question first. You're saying that it's a common law and a constitutional tort for a store to get a customer's zip code and sell the zip code to another store along with the customer's name. And I think the question we're asking is, does that Fogelman or Fogelstrom case say, no, it's only because of the Song-Beverly Act that there's any claim at all for doing that? It doesn't because you can have a separate suit for the conduct of disseminating information for profits that you could secure from anyone. In other words, there's two acts of conduct. Recordation and then what you do with the recorded information. If the conduct involving what you did with the recording information creates a distinct basis for liability... Is there a cause of action? Yes, for making private facts public, common law... But they have to be private. I mean, just because something is offensive to one or another individual doesn't mean there's a cause of action for it. What you're getting to is whether it's a meritorious claim. Somebody might have a claim against men who wear Bermuda shorts because they're unattractive, but there's no cause of action. Well, we have a cause of action asserted against us and we're entitled to a defense to show that maybe it is a false, frivolous, or groundless claim. And until the carrier shows up, defends, and we get rid of the claim, we still are entitled to a defense. But we think if you look at the in-ray Google Gmail case where you had scanned emails... I'm a little confused. This is an exclusion case, correct? Correct. And the whole thing is arising sort of after the fact and now it's a fight over the exclusion. Yes. So the exclusion they want to apply is to the Song-Beverly Act conduct. We're pointing out that there's more going on. In phone books, there's frequently a zip code. In phone books, there's frequently a zip code next to the address. So if I collect all of those zip codes and then I, on behalf of my business, send junk mail to those people, have I committed a violation somehow of their privacy? If you sell it to a third party in a way that is intrusive and alleged to be intrusive, it may be. Again, you're going to the merits. I just go to the telephone book. I get all these zip codes and now I'm in the business of selling Beverly Hills zip codes to people. I'm committing a constitutional privacy violation under California law? If the information was improperly procured, that could be actionable at some point. So then you go back to the SBA. No, but the SBA is not the determinative basis for liability. The reason why the SBA exists is because there was no right of privacy. What you're dealing with... Is that right? Isn't that what the legislative history of the cases say? It's not clear because... What's not clear? It says that. There's questions about the legislative history being used in the way they want. Our authority looks to that question. So you're admitting that's what the legislative history says. You just don't want to acknowledge it. No. I want you to look at the case law they cite and what we said about that case law, which questions whether it's truly effective legislative history the court can rely on. Also, I'd like you to look at Judge Posner's decision in Meade-Johnson at 735 F. 39-547-48, where he questions this but-for attenuated causation trail that is done using arising out of language that is also appropriate here. If you look at McKinnon, it would question contextually whether that's an appropriate trail to go back on. What you're saying is we were sued for things that are outside what the Song-Beverly Act addresses and existed as torts prior to and independently of the Song-Beverly Act. I am not clear on what the basis in California law was for saying that they did exist as torts prior to and outside of the Song-Beverly Act. Well, the point is that that's what's alleged. And if you look at the Pioneer case, they say it's a mixed question of law and fact as to what the expectation of privacy and invasion is. So, I guess what's your best case for the fact that this cause of action existed prior to the Song-Beverly Act? You can look at the Krotner case involving Starbuck from this court, 628 F. 3rd, 1139-1141, as well as Pioneer Electronics, 40 Cal 4, 360 and 370, Google Gmail, 2013 Lexus 172784. What do these cases say? They all say that you... Are these general stuff like you started off with Waller versus truck exchange, just general stuff on insurance law? Well, because they're not following the rules in the way they construe the policy. Are these cases that you're string-citing right now, are they about whether there's a cause of action... for privacy invasion under similar facts to ours, each and every one. And they suggest that given what's alleged, there may be. There's zip codes? They don't involve zip codes. There are very few zip code cases. Do they involve zip codes? No, they do not. Do they involve street addresses? They involve street addresses. A laptop, a Starbucks laptop was stolen. It had contact information, which included street address and zip codes. And the ability to disseminate that information, to contact those folks, that's the Krotner case, was perceived to be a privacy invasion issue. Because it goes beyond just the recording and collection. And what you really have is an ambiguous interpretation of an arising out of exclusion. If you look at Judge Ilston's decision that we cited in Kuporo, it clarifies that under Partridge, Cal Supreme Court case, arising out of has to be more narrowly viewed than exclusion. And there's no court of appeal decision subsequently that has questioned that particular phrase in Partridge and found that it doesn't apply. Okay, you're over your time, so I just want to make sure that my colleagues have all their questions answered. Okay, thank you. This matter will stand submitted.
judges: Trott, Kleinfeld, Callahan